UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KATHY WHITEHEAD, | ) | |
| | ) | Civ. No: 14-209-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM** |
| | ) | **OPINION** |
| CAROLYN W. COLVIN, Acting | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The Plaintiff, Kathy Whitehead, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Whitehead's application for a period of disability and disability insurance benefits (DIB). The Court, having reviewed the record and for the reasons set forth herein, will DENY Kathy Whitehead's Motion for Summary Judgment [R. 10] and will GRANT the Commissioner's. [R. 13.]

**I**

Kathy Whitehead filed an application for a period of disability and DIB on March 26, 2011. [Transcript (Tr.) 149-50.] She alleges a disability beginning on March 26, 2011, due to several mental disorders such as anxiety and depression, and also physical problems such as back and leg pain, high blood pressure, heart problems, and carpal tunnel syndrome. [Tr. 25, 34-39, 164.] Whitehead's application was denied initially in April 2012, and upon reconsideration in October, 2012. [Tr. 10.] Subsequently, at Whitehead's request, Administrative Law Judge (ALJ) Robert B. Bowling conducted an administrative hearing by video on June 4, 2013. [Tr. 10.]

During the hearing, the ALJ heard testimony from Whitehead and from vocational expert (VE) Jackie B. Rogers. [*Id*.]  Following the hearing, ALJ Bowling issued a decision denying Whitehead's application for DIB on July 10, 2013.  [Tr. 10-21.]  Whitehead, who was forty-seven years old as of the alleged onset date, has a limited education, having only completed the sixth grade.[1]  [Tr. 14, 28.]  Whitehead has past relevant work experience as a caretaker for the elderly and in housekeeping.  [Tr. 16, 30, 50.]  Although the ALJ determined that Whitehead is unable to perform her past relevant work, the VE testified at the hearing that there are several types of jobs at the light and sedentary levels that exist in significant numbers in the national economy that Whitehead could perform despite her limitations, and the ALJ accepted that testimony. [Tr. 16-17, 50-52.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis.  *See* 20 C.F.R. § 404.1520.[2]  First, if a claimant is performing a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal one of the

---

[1] Whitehead's DIB application states that she completed the eighth grade [Tr. 165], but at the hearing she testified that she thinks she only completed the sixth grade. [Tr. 28.]

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is "disabled." § 404.1520(f).

In this case, at Step 1, the ALJ found that Whitehead has not engaged in substantial gainful activity since her alleged onset date of March 26, 2011. [Tr. 12.] At Step 2, the ALJ found that Whitehead suffers from the following severe impairments: disorders of the spine, anxiety disorders, affective disorders, and obesity. [Tr. 12.] At Step 3, the ALJ found that Whitehead's impairments, whether considered alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 12-13.] Before moving to Step 4, the ALJ considered the entire record and determined that Whitehead possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following physical and mental limitations:

> The claimant can stand and walk for approximately 6 hours in an 8-hour workday; sit for approximately 6 hours in an 8-hour workday; frequently handle, that is, in gross manipulation with both upper extremities; frequently finger, that is, in fine manipulation with both upper extremities. The claimant can occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch, and crawl; and frequently climb ramps and stairs. Work is limited to simply, routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only

>  simply, work-related decisions and with few, if any, work place changes; claimant should have only occasional interaction with the public, coworkers and supervisors.

[Tr. 13-14.] After explaining in detail how he determined Whitehead's RFC [Tr. 14-16], the ALJ found at Step 4 that based on this RFC, Whitehead is unable to perform any past relevant work. [Tr. 16.] At Step 5, the burden shifted to the Commissioner to identify a significant number of jobs in the national economy that Whitehead could perform, given her RFC, age, education, and experience. *Jones*, 336 F.3d at 474; 20 C.F.R. § 404.1520(g); 20 C.F.R § 404.1560(c). Here, the ALJ concluded that, based on Whitehead's RFC and the VE's testimony, there are jobs that exist in significant numbers within the national economy that Whitehead could perform. [Tr. 17.] Accordingly, on July 10, 2013, the ALJ issued an unfavorable decision, finding that Whitehead was not disabled, and therefore ineligible for DIB. [Tr. 18.] The Appeals Council declined to review the ALJ's decision on August 27, 2014 [Tr. at 1-3], and Whitehead now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman*, 693 F.3d at 714 (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### A

Whitehead's motion for summary judgment makes three arguments concerning the ALJ's alleged error. First, Whitehead contends that the ALJ erred by not finding that Whitehead's impairments meet the criteria of Listing 12.05(B) for Intellectual Disability.[3] [R. 10-1 at 6.]

At Step 3 of the sequential evaluation process, the claimant has the burden of showing that his impairments are equal or equivalent to a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). Because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," the evidentiary standards for determining disability by meeting the listed impairments are stricter than the standards employed at later steps in the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see* 20 C.F.R. §§ 404.1526, 416.926. "For a claimant to show that his impairment matches a listing, it must meet *all* of the

---

[3] Effective September 3, 2013, the term "intellectual disability" replaced the previous term "mental retardation" in Listing 12.05. *See* 78 Fed. Reg. 46,499 (August 1, 2013) (codified at 20 C.F.R. pts. 404 and 416).

specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. at 530 (emphasis in original); *see also Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530).

A claimant only meets Listing 12.05 if his impairment "satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria" in Paragraphs A though D. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (emphasis added). Thus, in order to satisfy the requirements of Listing 12.05 for Intellectual Disability, a claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22"; and the claimant must also show one of the sets of criteria in Paragraphs A, B, C, or D. *Id*. §12.05. "In other words, to demonstrate mental retardation, a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009). In addition, the criteria in Paragraph B of 12.05, which Whitehead claims she meets, requires "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05(B).

Here, Whitehead does meet the Paragraph B criteria because the psychological examination conducted by Michelle Amburgey, M.A. concluded that Whitehead's full scale I.Q. score was 57. [Tr. 294-301.] Importantly, however, Whitehead fails to meet the requirement of showing that her intellectual deficits initially manifested prior to age twenty-two, which, as explained above, is a threshold requirement of Listing 12.05 that must be satisfied before consideration of any criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P, App. 1

6

§12.05.  The only "evidence" Whitehead proffers in support of this requirement is that she did not complete the seventh grade.  [R. 10-1 at 6.]  According to Whitehead, this fact is "evidence that the mental retardation occurred before the age of 22."  [*Id*.]   However, this Circuit has repeatedly found that leaving school early, or other circumstantial evidence such as poor grades, are not sufficient to establish the deficits in intellectual or adaptive functioning required for Listing 12.05.  *See, e.g., Eddy v. Comm'r of Soc. Sec*., 506 F. App'x 508, 510 (6th Cir. 2012) (affirming ALJ's conclusion that claimant did not meet Listing 12.05 because claimant's reliance on records of attending special education classes and quitting school in eighth grade were insufficient to establish that she had significantly sub-average intellectual functioning before age twenty-two); *Hayes*, 357 F. App'x at 677 ("[t]his Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of sub-average intellectual functioning before age twenty-two."); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (finding claimant failed to demonstrate intellectual deficits before age twenty-two because "[t]he only evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue with her studies is unclear").  Although claimants are not required to produce an IQ score obtained before age 22, a claimant is required to make some showing that her deficiencies in adaptive functioning arose before that time, but Whitehead has offered no evidence at all to make this showing.  *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007).

Moreover, Whitehead also has not demonstrated sufficient adaptive-skills limitations to meet Listing 12.05.  "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills."  *West*, 240 F. App'x at 698 (citation omitted).  Although Whitehead mentions that her reading and math scores measured in the third

7

grade level and her spelling abilities in the second grade level [R. 10-1 at 6], the ALJ also noted that she lives with her disabled husband and an adult son; she has a driver's license and drives short distances; she performs activities of daily living such as occasional cooking, laundry, grocery shopping, and attending church; and that she worked for many years as a caretaker for elderly people and in housekeeping. [Tr. 14-16.] Even if Whitehead experiences difficulty in these areas now, she has not presented any evidence that such limitations arose during the developmental period. *See Foster*, 279 F.3d at 255 (rejecting claimant's argument that she met Listing 12.05 when she presented no evidence supporting the onset of "deficits in adaptive functioning" before age twenty-two). Additionally, Whitehead's own testimony that she became disabled in 2011 when she was forty-seven years old, combined with the records of Whitehead's past work history, all contradict the unsupported assertion that Whitehead suffered from mental retardation before age twenty-two. Accordingly, ALJ Bowling did not err by not finding that Whitehead met Listing 12.05(B).

**B**

Whitehead's second argument is that the ALJ erred "by mechanical application of the vocational guidelines" to find that Whitehead was not disabled. [R. 10-1 at 4-6.] At Step Five in the sequential evaluation process, the ALJ may determine that a sufficient number of jobs exist in the national economy that the claimant can perform by relying either on the testimony of a vocational expert or by relying on the Medical Vocational Guidelines (commonly referred to as "the Grids"). 20 C.F.R. §§ 404.1566(d)-(e), 416.962. Reliance on vocational expert testimony instead of the Grids "is required only if 'the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level. . . .'" *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 772 (6th Cir. 1987) (quoting *Kirk*, 667

F.2d at 528-29). The Commissioner may not apply the Grids if the claimant suffers from nonexertional impairments. *Id*. The Sixth Circuit has "traditionally considered the term 'nonexertional' to encompass mental, sensory, or environmental limitations." *Cole*, 820 F.2d at 772; 20 C.F.R. § 404, Subpart P, Appendix 2.

Here, ALJ Bowling did not mechanically apply the Guidelines in making his disability determination. Whitehead is correct that rote application of the Grids is inappropriate where the claimant suffers from nonexertional limitations such as mental illness. *See Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). However, ALJ Bowling specifically noted that rule and accordingly took into account Whitehead's psychological limitations by having the VE testify at the hearing. [Tr. 17.] The ALJ asked the VE about the existence of jobs in the national economy that an individual with Whitehead's limitations, including her limited education and other nonexertional limitations, could perform, and ALJ Bowling then relied on that testimony in reaching his conclusion instead of relying solely on any portion of the Guidelines.[4] [Tr. 17.] Accordingly, the ALJ appropriately considered testimony from a vocational expert, as he is required to do when a claimant has psychological impairments in addition to physical ones. *See Damron v. Sec'y of Health & Human Servs.,* 778 F.2d 279, 282 (6th Cir.1985); *see also Eason v. Colvin*, 2014 WL 2114710, at *6 (N.D. Ohio May 20, 2014) (finding ALJ "appropriately solicited VE testimony instead of relying solely on the Grids" when claimant had additional non-exertional limitations).

---

[4] Moreover, psychologist Michele Amburgey was the primary source of any documentation concerning Whitehead's mental limitations, but ALJ Bowling gave "little weight" to Amburgey's opinion that Whitehead suffers from mild mental retardation because it was inconsistent with Whitehead's demonstrated work history at substantial gainful activity levels through 2010, and because there was no evidence of such retardation before age 22. [Tr. 16, 298.]

C

Whitehead also contends that she is disabled "pursuant to Grid Rule 201.09." [R. 10-1 at 6.] Her only support for this assertion is that she is currently fifty-one years old with a sixth grade education, and that her treating physician Dr. Robert Hoskins found she was unable to lift and carry more than ten pounds. [*Id*.] Based on these assertions, Whitehead contends that the ALJ erred by not concluding that she was "disabled" under Grid Rule 201.09.[5] To use the Grids as a basis for a decision in a Social Security Disability case, however, the claimant's characteristics must "precisely match" the description in the grid. *Kirk,* 667 F.2d at 531. Here, Rule 201.09 is inapplicable because Whitehead's characteristics do not match the required description.

First, Rule 201.09 applies only to claimants "closely approaching advanced age," which is defined as those between the ages of fifty and fifty-four. 20 C.F.R. § 404.1563(d). Whitehead, however, was forty-nine at the time the ALJ issued his decision. [Tr. 14.] The social security regulations consider persons under the age of fifty as "younger" persons. 20 C.F.R. § 404.1563(c). Even if Whitehead is fifty-one now, the ALJ was required to apply the law to Whitehead's age at the time of his decision, which he did, and therefore Rule 201.09 did not apply. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987) ("the claimant's age as of the time of the decision governs in applying the regulations").

Second, regardless of Whitehead's age, Rule 201.09 corresponds to claimants with a residual functional capacity for *sedentary* work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00. In determining Whitehead's RFC, the ALJ found she was capable of a range of *light* work. [Tr.

---

[5] The Court notes that Whitehead's argument here appears to somewhat contradict her previous contention that the ALJ improperly relied on a mechanical application of the Guidelines. Nevertheless both arguments will be considered.

10

13-14.] No challenge to that finding has been presented here, and therefore none of the rules in Table One under § 201.00 apply in this case. *See also Rangel v. Comm'r of Soc. Sec.*, 138 F. Supp. 2d 921, 928 (E.D. Mich. 2001) (explaining that the Guidelines in § 201.00 only apply to individuals "limited to sedentary work as a result of severe medically determinable impairments"); *Eason*, 2014 WL 2114710, at *6 (finding assignment of error without merit where ALJ did not apply Rule 201.09 because claimant's RFC was for *light* work and Rule 201.09 only applies to individuals limited to *sedentary* work); *Colon v. Comm'r of Soc. Sec.*, 2010 WL 1292762, at *4 (W.D. Mich. Mar. 11, 2010) *report and recommendation adopted*, 2010 WL 1292485 (W.D. Mich. Mar. 30, 2010) (finding that when claimant's RFC was for a range of light work, the ALJ did not err by not using Rule 201.09 because "Rule 201.09 only applies to individuals limited to sedentary work"). Moreover, as discussed above, the ALJ correctly chose not to solely rely on the grids because of Whitehead's additional non-exertional impairments and therefore appropriately utilized the VE's testimony as well. *See Eason*, 2014 WL 2114710, at *6. Thus, any contention concerning either the ALJ's reliance on the grids or his failure to use a specific grid is without merit.

Finally, Whitehead also implies that because the ALJ found Whitehead was not disabled the ALJ must have erred in his analysis because he conceded her impairments were "severe" and she has not engaged in substantial gainful activity since the alleged onset date. [R. 10-1 at 4.] Those two findings, however, are only two of many considerations the ALJ must consider in making a determination using the sequential evaluation process. To the extent Whitehead contends that the ALJ's decision is unsupported by substantial evidence, this argument is either dependent on the arguments discussed above or else is too poorly developed to warrant further analysis. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (noting that

reviewing courts limit their consideration "to the particular points that [the claimant] appears to raise in her brief on appeal"); *see also Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000) (noting that issues presented in a perfunctory manner with no effort at developed argumentation are deemed waived); *Hicks v. Astrue*, 2010 WL 399099, at *3 (E.D.Ky. Jan. 26, 2010) (warning that the court is inclined to dismiss claims that "merely provid[e] . . . conclusory statements that the ALJ's findings are incorrect and claim that as a result he is entitled to disability benefits").

### III

As explained above, this Court is limited to a determination of whether the Commissioner's decision, "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604 (6th Cir.2009)). Here, ALJ Bowling's decision is supported by substantial evidence. Whitehead has not demonstrated that the ALJ's decision was improper, nor has she pointed to evidence in the record supporting her claims that the ALJ improperly used or failed to use the Guidelines or Listing 12.05. The fact that Whitehead disagrees with the ALJ's ultimate conclusion is not by itself sufficient to meet her burden. More than mere disagreement with the ALJ's conclusion is required to successfully assign error to an ALJ's findings. *See, e.g., Richards v. Astrue*, at *8 (N.D. Ohio, June 8, 2012) (quoting *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105, at *7 (W.D. Mich. Mar. 26, 2012)).

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Whitehead's Motion for Summary Judgment [**R. 10**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 13**] is **GRANTED**; and

3. Judgment in favor of Defendant will be entered contemporaneously herewith.

This 28th day of March, 2016.

Gregory F. Van Tatenhove
United States District Judge